UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN P. MAHONEY and<br>PAULETTE R. MAHONEY,<br><br>    <u>Plaintiffs</u>,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>    <u>Defendant</u>. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 10-12230-DPW<br>)<br>)<br>)<br>)<br>) |

REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS

June 10, 2011

SOROKIN, M.J.

Pending is the Defendant, Bank of America N.A.'s, Motion to Dismiss (Docket # 11). For the following reasons, I RECOMMEND that the Court ALLOW the Defendant's motion.

I.      PROCEDURAL AND FACTUAL BACKGROUND

The Complaint of the pro se Plaintiffs, Kevin and Paulette Mahoney, is a lengthy and prolix narrative. Docket # 1. In summary, the Mahoneys allege a myriad of fraudulent actions (almost entirely by non parties) with regard to their residential mortgage, executed in 1999, which they claim entitle them not only to rescission of the mortgage, but also to clear title to the subject property, disgorgement of all payments made by them, and compensatory and punitive damages in the amount of roughly two million dollars. Id. at ¶ 109.

1

Bank of America moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing inter alia that the claims are barred by applicable statutes of limitations and that the Complaint states no plausible basis for liability on its part. Docket # 11.

Subsequent to the filing of Bank of America's motion, the Plaintiffs moved for permission to amend the Complaint to provide a "[m]ore definite statement," exhibits and "evidence of third party forensic examiners." Docket # 20. On March 11, 2011, the Court allowed their motion, and ordered that any amended pleading was to be filed within ten days (i.e., by March 21, 2011). To date, no Amended Complaint has been filed, and thus I RECOMMEND that the Court proceed to resolution of the Rule 12 Motion to Dismiss the original (and only) Complaint.

II.     DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir.1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir.1997)(quoting

2

Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988) (internal quotation marks omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 129 S.Ct. at 1949. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. The Court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir.2009)(quoting Iqbal, 129 S.Ct. at 1949). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." Id.

Liability for Acts of Non Parties

The Complaint includes a dizzying array of factual allegations describing fraudulent misconduct in 1999, which is almost exclusively attributed to persons and entities who are not named therein as defendants.[1] Although Bank of America is at one point identified as the "lender" referenced elsewhere in the Complaint (See, Docket # 1 at ¶ 1), the "lender" is in all other instances identified (both in the remaining factual allegations and in the 1999 mortgage

---

[1] The Plaintiffs allege: (1) breach of fiduciary duty (asserted against: a real estate broker, Mary Ann Kalian; the original lender, Old Kent Mortgage Company; an appraiser, Jules Coleman; and the law office that handled the closing, Jepsky & Sack), at Docket # 1 at ¶¶ 63-78; (2) Negligence by all defendants, Id. at ¶¶ 79-85; (3) common law fraud by all defendants, Id. ¶¶ 86-91 (4) fraud by non disclosure by all defendants, Id. at ¶¶ 92-95; (5) Intentional Infliction of Emotional Distress by all defendants, Id. at ¶¶ 103-104; (6) Civil Conspiracy among all defendants, Id. at ¶¶ 23(h), 52; (7) Breach of the Implied Covenant of Good Faith and Fair Dealing, against Kalian, Id. at ¶¶ 59-62; (8) Unfair Business Practices, against all defendants (Id. at ¶¶ 105-106; (9) Violations of the Truth in Lending Act, against all defendants, Id. at ¶¶ 96-102; (10) Violations of the Real Estate Settlement Procedures Act, against all defendants, Id. at ¶¶ 97-98; (11) a challenge to Bank of America's standing to enforce the Note, Id. at ¶¶ 34-41, 55-57 (12) Criminal Fraud and Criminal Conspiracy, against all defendants, Id. at ¶¶ 50; and (13) "Claims Too Numerous to Include in the Complaint" Id. at ¶ 58.

documents incorporated by reference into the Complaint) as the "Old Kent Mortgage Company."
Id. at ¶ 8; Docket # 1-1, 1-2, 1-3, 1-4.

As best the Court can determine,[2] the only factual allegations concerning Bank of America in the Complaint are that the Plaintiffs reject Bank of America's assertion that it now owns the Note because "all sales of the security instrument have not been properly filed in the public record," with the result that the Plaintiffs have "no way of knowing, absent full disclosure under discovery, who is the real party in interest." Id. at ¶¶ 34, 36 (citing U.C.C. §3-501). The Plaintiffs also assert that Bank of America fraudulently claims to own the note, "for the purpose of defrauding Plaintiff of Plaintiff's property." Id. at ¶¶ 39, 40-41. Bank of America concedes that it currently holds the note and has initiated foreclosure proceedings against the Mahoneys. Docket # 12 at 1. The record before the Court is otherwise silent as to the circumstances surrounding Bank of America's acquisition of the Note.

With the exception of the claim concerning Bank of America's standing to enforce the note, each of the claims is subject to dismissal because the Complaint does not plausibly articulate any legal basis for holding Bank of America liable for the conduct of the separate persons and entities referenced throughout the Complaint, yet not named as defendants therein.

---

[2] Interpretation of these allegations is complicated by the fact that the Plaintiffs' language is peculiarly opaque throughout and the name "Bank of America" does not appear in the allegations here recited. The Plaintiffs refer instead to "the alleged agent for the lender" or the "Current Servicer," and the Court construes these references, in context, to refer to Bank of America. In fact, had Bank of America not explained in its memorandum that it held the Note and had initiated foreclosure proceedings, Bank of America's connection to the Mahoney's property would not be readily apparent from the Complaint itself.

The Plaintiffs argue in conclusory fashion that all of the defendants[3] are jointly and severally liable as co-conspirators, and state that they named only "the party (parties) presently claiming agency and standing to enforce the note" and that they did so, "in the interest of judicial economy." Docket # 21 at 2. The Plaintiffs have not alleged that any of the individuals or entities whose 1999 acts form the basis of their Complaint are, or were, employees or related entities of Bank of America. The Plaintiffs have not alleged a plausible basis for a finding that Bank of America is legally responsible for the actions of non-party co-conspirators years prior to Bank of America's purchase of the Note. Under Fed. R. Civ. P. 8(a), it is their burden to allege in a short and plain statement the basis for their claim that they are entitled to relief. They have failed to do so with regard to Bank of America's liability for the 1999 misconduct because the Complaint fails to make any connection between the 1999 allegations and Bank of America, other than a conclusory assertion of participation in a conspiracy.[4]

---

[3] The Complaint repeatedly refers to "the Defendants" in the plural, although only Bank of America is named as Defendant.

[4] Each of the claims asserted against the non parties would in any event be subject to dismissal as untimely. As noted in Bank of America's memorandum, each of the torts alleged has a limitations period of, at most, six years. See Docket # 12 at 5-9 (delineating applicable limitations period for each tort alleged). With the exception of the allegation that Bank of America fraudulently obtained the Note, all of the conduct objected to by the Mahoneys occurred in June, 1999, or earlier. Thus, the limitations period ran, at the latest, in June, 2005. The Mahoneys initiated suit almost five years later, on December 23, 2010. Docket # 1. The Plaintiffs argue that the limitations period should be subjected to equitable tolling because they acted at all times only with licensed professionals in whom they had placed their faith and that they were reasonably on notice of wrongdoing only when "the improprieties of the real estate market were finally made public in the popular media. Docket # 21 at 3-4. The prolix nature of the Complaint makes it difficult to understand the particular nature of the allegations against the non party actors, complicating assessment of when and whether the Plaintiffs should reasonably have discovered their causes of action. Given that these actors are not defendants and that the acts complained of cannot plausibly be attributed to the only named Defendant, the Court need not resolve this issue.

Allegations Against Bank of America

The allegations made against Bank of America are subject to dismissal because they are insufficiently pleaded. The claims directed against Bank of America appear to be that the assignment of the Note to Bank of America was fraudulently obtained, or, alternatively, that Bank of America may not enforce the Note because the Note has been "nullified."

Allegations of fraud must meet a heightened pleading standard and state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). The conclusory statement that Bank of America's assignment of the Note was fraudulently obtained does not suffice. To satisfy this heightened pleading standard, a complaint must include details which identify a particular false claim including "the time, place, and content of an alleged false representation." United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir.2009) (internal quotations omitted). The Complaint is completely silent as to the circumstances under which assignment of the Note to Bank of America was made. To be sure, the Plaintiffs complain of this very fact, asserting that the identity of the true holder of the note is unknown to them. Docket # 1 at ¶¶ 35-37 (citing U.C.C. § 3-501 and Bank of America's failure to comply with same). However, the fact that the Plaintiffs are not aware of the basis of Bank America's claim to hold the note is not itself a cause of action. Moreover, the generalized allegation that Bank of America's claimed ownership of the note is invalid due to "nullification" fails to state a plausible claim under Twombly and Iqbal.

III.   CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court ALLOW the Defendant's Motion to Dismiss.[5]

                                                   /s / Leo T. Sorokin
                                                  UNITED STATES MAGISTRATE JUDGE

---

[5] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).